ROBERT B. CROUCH et al.

v.

THE FIRST NATIONAL BANK OF CHICAGO.

*Filed at Ottawa May 15, 1895.*

1. APPEALS AND ERRORS—*when appeal lies from judgment against one of several parties.* In a suit in chancery\against a bank.and other defendants, to secure a general fund in the hands of receivers for the mutual benefit of the creditors of a limited partnership by having certain preferences set aside, a judgment in favor of the bank is appealable, although the cause remains undisposed of as to other defendants, where the amount of the fund could only be ascertained by a determination of the issue as to the bank.

2. PARTNERSHIP—*limited—property a trust fund when insolvent.* The property of an insolvent limited partnership is a trust fund for creditors, under the statute making it unlawful to make any preferences, and declaring every conveyance, transfer, assignment, judgment or lien for that purpose void.

3. SAME—*limited—sufficiency of affidavit as to organization of.* An affidavit to a certificate of limited partnership, that a designated sum, stated in the certificate to have been contributed by the special partner, "has been actually contributed and applied and paid into the same," means that the sum has been paid *in good faith* and in cash, and is a compliance with the statute.

4. CREDITOR'S BILL—*preference by limited partnership—who may attack.* A simple contract creditor may attack an unlawful preference by a limited partnership as if no attempt had been made to dissolve it, where the members have merely pretended to dissolve it, in furtherance of their purpose to make such preference and to wrong and defraud creditors.

*Crouch* v. *First Nat. Bank,* 47 Ill. App. 574, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

WILLIAM J. MANNING, HARVEY B. HURD, and ADOLPH MOSES, for appellants:

The rule that one who deals with a limited partnership, or with a corporation in its corporate capacity, can not impeach its existence in a collateral proceeding by

showing that the conditions precedent have not been complied with, is well established.   *Spahr* v. *Bank,* 13 Norris, 429; *Johnston* v. *Loan Ass.* 104 Pa. St. 894; *Rice* v. *Railroad Co.* 21 Ill. 93; *Tarbell* v. *Page,* 24 id. 46; *Winget* v. *Building Ass.* 128 id. 67; *McCarthy* v. *Lavasche,* 89 id. 270; *Coal Co.* v. *Maxwell,* 22 Fed. Rep. 197; *Receivers* v. *Renick,* 15 Ohio, 822.

If the affidavit filed clearly establishes the fact that the special partner has paid into the firm the amount mentioned in the certificate, it is sufficient.   The words "actually paid in," admit of no other construction than money actually paid.   Bates on Limited Partnership, 43, 44; *Johnson* v. *McDonald,* 2 Abb. Pr. 290; *Holliday* v. *Paper Co.* 3 Col. 843.

Bates on Limited Partnership (sec. 156) says "that insolvency of the firm turns the assets into a trust fund for creditors equally," and the following cases fully sustain the doctrine:   *Innes* v. *Lansing,* 7 Paige, 583; *Jackson* v. *Sheldon,* 9 Abb. Pr. 127; *Whitewright* v. *Stimpson,* 2 Barb. 379; *Hayes* v. *Heyer,* 3 Sandf. 293; *Batchelder* v. *Altheimer,* 10 Mo. App. 181; *Levy* v. *Ley,* 6 Abb. Pr. 89; *Greene* v. *Breck,* 32 Barb. 73; *Whitcomb* v. *Fowle,* 56 How. Pr. 367; *Durant* v. *Abendroth,* 97 N. Y. 132; *McArthur* v. *Chase,* 13 Gratt. 683.

FLOWER, SMITH & MUSGRAVE, for appellee:

Where a bill has been dismissed as to one or more parties, no appeal will lie until there has been a final disposition of the case as to all the other parties.   A cause of action cannot be reviewed as to one party at one time and as to another party at another time.   *Bank* v. *Jenkins,* 109 Ill. 219; *Thompson* v. *Follansbee,* 55 id. 427; *Hutchinson* v. *Ayres,* 117 id. 558; *Manufacturing Co.* v. *Haxton Steam Heating Co.* 18 Ill. App. 484; *People* v. *McFarland,* 3 id. 237.

No limited partnership can be formed in this State unless the provisions of the statute have been strictly, or at least substantially, complied with; and where a defect appears upon the face of the organization papers, it becomes the duty of the court to determine, as a question

of law, whether a limited partnership has been formed. Rev. Stat. chap. 84, sec. 18; *Henkel* v. *Heyman*, 91 Ill. 96; *Pfirman* v. *Henkel*, 1 Ill. App. 145; *Brass Co.* v. *Allin*, 35 id. 336; *Adam* v. *Musson*, 37 id. 501; *Van Ingen* v. *Whitman*, 62 N. Y. 513; *Argall* v. *Smith*, 3 Denio, 435; *Andrews* v. *Shott*, 10 Barr, 47.

The assets of a limited partnership are trust funds in no other sense than are the assets of a general partnership, to-wit, when a court of equity is promptly appealed to to administer them, and such application is made before they have ceased to be partnership assets. *Hanford* v. *Prouty*, 133 Ill. 339; *Blow* v. *Gage*, 44 id. 208; *Hapgood* v. *Cornwell*, 48 id. 64; *Goembel* v. *Arnett*, 100 id. 34; Rev. Stat. chap. 84, sec. 12; *Upson* v. *Arnold*, 19 Ga. 190; *Van Alstyne* v. *Cook*, 25 N. Y. 494; *Baker's Appeal*, 21 Pa. St. 76; *Ladd* v. *Griswold*, 4 Gilm. 25; *Case* v. *Beauregard*, 99 U. S. 125.

The courts of this State have fully recognized, by a long line of decisions, that an insolvent debtor, whether an individual, co-partnership or a corporation, may lawfully prefer a *bona fide* creditor, and that such creditor may lawfully receive and retain such preference. *Reichwald* v. *Hotel Co.* 106 Ill. 439; *Warren* v. *Bank*, 149 id. 9; *Gottlieb* v. *Miller*, 154 id. 44.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District, affirming a decree of the circuit court of Cook county sustaining a demurrer to a bill in chancery. The bill was filed by appellant Chester C. Corbin, in behalf of himself and all other creditors of the limited partnership of Boies, Fay & Conkey, against William A. Boies, Benjamin B. Fay, Lucius W. Conkey, Julius K. Graves, the First National Bank of Chicago, and others. It alleges that the complainant purchased of the limited partnership of Boies, Fay & Conkey, on November 15, 1882, their two promissory notes, dated

October 30, 1882, due in ninety days and four months from date, one for $1734.21 and the other for $2016.92, both payable to the order of the makers and endorsed by the firm name.   It then sets up the organization, on March 30, 1882, of a limited partnership by Boies, Fay and Conkey, with Julius K. Graves as a special partner, contributing to the partnership the sum of $50,000, to continue to March 30, 1887, setting out the certificate of partnership, acknowledgment, filing and recording of the same, in conformity with sections 4, 5 and 6, of chapter 84, of the Revised Statutes.   (2 Starr & Curtis, 1565).   Also the filing of an affidavit by Benjamin B. Fay, one of the general partners, required by section 7 of the same chapter, the affidavit being copied at length.   It further alleges publication of the terms of the limited partnership, and that "having in all things complied with the provisions of the Limited Partnership act, William A. Boies, Benjamin B. Fay and Lucius W. Conkey, with Julius K. Graves as a special partner, constituted a limited partnership, under the firm name of Boies, Fay & Conkey," and thereupon, on March 30, 1882, commenced in the city of Chicago the business of dealing in groceries at wholesale, which it continued to carry on, under its firm name, until in the month of January, 1883; that during that time it contracted debts and incurred obligations amounting to much more than its assets, and being insufficient to pay more than fifty cents on the dollar thereof; that during said month of January, and for several months prior, it had great difficulty in meeting its debts and to pay the same as they matured, and to conceal the actual condition of its affairs and its insolvency it borrowed and procured large sums of money, by loans and discounts of its commercial paper; that on or about December 2, 1882, said Boies, Fay, Conkey and Graves, well knowing said limited partnership was insolvent, and with the intent to hinder, delay and defraud such of the creditors of said limited partnership as they did not in-

tend to prefer, and in contemplation of insolvency, and with intent to prefer certain of their creditors, and with the intent to evade the provisions of the said act under which said limited partnership was organized, pretended to dissolve said limited partnership, and for that purpose they caused to be filed, on or about December 20, 1882, a paper purporting to be a dissolution of said partnership, but that said paper writing was ineffectual for the purpose of effecting any dissolution of said limited partnership, and was a mere device, contrived by said Boies, Fay, Conkey and Graves, to evade the provi-. sions of said Limited Partnership act, and to give color of authority and validity to the acts of said Fay and Conkey in the execution of judgment notes and confessions of judgments thereafter to be entered against them; that after said pretended dissolution said Fay and Conkey pretended to carry on said business, and assumed to own all the assets of said limited partnership; that said Boies and Graves pretended to release and convey their interest in the limited partnership assets to said Fay and Conkey, but that such release or conveyance thus executed was wholly inoperative, and fraudulent and void as against the complainant and other creditors of said limited partnership, and made with the intent to hinder, delay and defraud such creditors; that under said act of the General Assembly of Illinois under which said limited partnership was formed, all the assets of the said limited partnership were secured and pledged to the payment of the debts ratably, and that it was the duty of said Boies, Fay, Conkey and Graves, when they first had knowledge of the insolvency of said limited partnership, or at the time of their pretended dissolution thereof, to have some competent trustee appointed to take possession and charge of the assets of said partnership and convert the same into money, and distribute it ratably among the creditors of said limited partnership; that on January 22, 1883, in pursuance of said fraudulent scheme

and contrivance, said Benjamin B. Fay and Lucius W. Conkey executed their judgment notes, payable on demand, with warrants of attorney annexed, as follows: One judgment note to the First National Bank of Chicago, for $40,000; one to said Julius K. Graves, (special partner,) for $17,500; one to John H. Lull, for $2500; one to George E. Johnson, for $5000; one to J. W. Doane & Co., for $15,000; another to J. W. Doane & Co., for $9853.18; and one to Mary Murison, for $1500; that on said January 22, 1883, there were entered, in and by the Superior Court of Cook county, judgments against said Benjamin B. Fay and Lucius W. Conkey upon each of said notes, in pursuance of the warrants of attorney thereto annexed, together with costs and five per cent attorney's fees, as follows: One judgment in favor of the First National Bank of Chicago, for $42,000; one judgment in favor of Julius K. Graves, (special partner,) for $18,375; one in favor of John H. Lull, for $2625; one in favor of George E. Johnson, for $5250; one in favor of J. W. Doane & Co., for $15,750; one in favor of J. W. Doane & Co., for $19,345.83; one in favor of Mary Murison, for $1620; that on January 22, 1883, in the further pursuance of the said fraudulent scheme and contrivance, the said Benjamin B. Fay and Lucius W. Conkey executed other judgment notes, payable on demand, with warrants of attorney annexed: one to Julius K. Graves, for $27,000; one to the Commercial National Bank of Dubuque, Iowa, for $14,250; one to the Dubuque County Bank, for $11,900; one to the Importers and Traders' National Bank, for $16,000; one to the Merchants' National Bank of Ohio, for $4298.17; one to J. L. Dobbins, for $840; one to Alvin F. Shumway, for $6990; one to Addison B. Robinson, for $1100; one to the Bay State Sugar Refining Company, for $10,000; one to the First National Bank of Westboro, Mass., for $11,000; one to Hiram A. Sheldon, for $5500; one to Martha J. Fay, for $3700; one to D. C. Adams, for $1770.64; one to the Necedah Lumber Company, for $1350; and one

to Walter Potter for $4300; that on the same day there
were entered, in and by the Circuit Court of the United
States for the Northern District of Illinois, at Chicago,
judgments against said Benjamin B. Fay and Lucius W.
Conkey upon each of said last named notes, in pursuance
of said warrants of attorney thereto annexed, with costs
and five per cent attorney's fees, as follows: In favor of
Julius K. Graves, for $28,350; the Commercial National
Bank of Dubuque, for $14,962.50; the Dubuque County
Bank of Dubuque, for $12,495; the Importers and Traders'
National Bank, for $16,800; the Merchants' National
Bank of Ohio, for $4508.97; J. L. Dobbins, for $882; Alvin
F. Shumway, for $7339.50; Addison B. Robinson, for $1155;
the Bay State Sugar Refining Company, for $10,500; the
First National Bank of Westboro, Mass., for $12,600;
Hiram A. Sheldon, for $5775; Martha J. Fay, for $3885;
D. C. Adams, for $1859.14; the Necedah Lumber Com-
pany, for $1417.50; and Walter Potter for $4515; that on
the same day the attorneys for said Boies, Fay, Conkey
and Graves, being also attorneys of record for all the
plaintiffs in said judgments entered in the Superior Court
of Cook county, caused execution to be issued upon each
of said judgments against the goods, chattels, lands and
tenements of said Benjamin B. Fay and Lucius W. Conkey,
directed to the sheriff of Cook county, and said sheriff,
by the direction of said attorneys, levied said executions
upon the stock of merchandise belonging to said limited
partnership, of the value of about $75,000; that said levy
and seizure of said limited partnership property were
made in further pursuance of said fraudulent scheme on
the part of said Boies, Fay, Conkey and Graves, and
with their consent and connivance, and with the intent to
delay, hinder and defraud the creditors of said limited
partnership, and with the intent to give a preference to
each of the parties in whose favor said judgments were
entered; that said sheriff sold said assets for about
$54,000, and that he has the proceeds of such sales in his

possession; that immediately after said judgments were entered in the Circuit Court of the United States for the Northern District of Illinois, the attorneys of said Boies, Fay, Conkey and Graves, being the attorneys of record for the said Commercial National Bank, said Julius K. Graves, said Dubuque County Bank and said Importers and Traders' National Bank in the judgments by confession entered in their favor, caused executions to be issued on each of said judgments and delivered to the marshal for said district, who, on the same day, returned said executions *nulla bona*, and thereupon said attorneys caused a creditors' bill to be filed in said Circuit Court of the United States, in which bill they prayed for the appointment of a receiver, and under said bill one Bradford Hancock was appointed receiver, and under said appointment the books of account and bills receivable belonging to said limited partnership, and amounting to over $200,000, were by said Fay and Conkey delivered to said Hancock, who is now collecting the drafts, notes, amounts and choses in action due to said limited partnership; that thereafter a second creditor's bill was filed in said Circuit Court of the United States, based upon the judgments heretofore shown, in favor of said Bay State Sugar Refining Company, Martha J. Fay, the First National Bank of Westboro, Addison B. Robinson, Alvin F. Shumway and Hiram A. Sheldon, under which said second creditors' bill said Hancock was also appointed receiver.

The bill further alleges, that each and every of said judgments were entered and rendered in pursuance of said fraudulent scheme on the part of said Boies, Fay, Conkey and Graves, in fraud of the rights of creditors and for the purpose of defeating and evading the provisions of the Limited Partnership act of Illinois, under which said limited partnership was formed, and with the intent to give a preference to the several persons in whose favor said judgments were confessed over the

other creditors of said limited partnership; that the aggregate amount of attorneys' fees included in said judgments amounts to $10,657.65, which is exorbitant and excessive; that the said confessed judgment in favor of the First National Bank of Chicago for $42,000 and the said two confessed judgments in favor of Julius K. Graves, (special partner,) one for $18,375 and the other for $28,350, and other judgments, are largely in excess of the amount actually due, respectively, at the time of the entry of said judgment; that said Benjamin B. Fay and Lucius W. Conkey, at the time they executed said notes and warrants of attorney thereto attached, well knew said limited partnership was insolvent; that said notes were executed and judgments confessed thereon with the intention and for the purpose of paying and securing each of the persons in whose favor the judgments were rendered, in preference to any other of the creditors of said limited partnership; that the confession of said judgments, and each of them, was an unlawful act on the part of said Fay and Conkey, and prohibited by the said Limited Partnership act of Illinois, under which said limited partnership was formed, and that the said confessed judgments, and each of them, and all acts done in pursuance thereof or thereunder, are utterly void; that the property so taken on execution by the sheriff of Cook county, and the notes, accounts, bills receivable and choses in action so transferred to the possession of said Bradford Hancock, as receiver, constitute the whole of the property, assets and effects of said limited partnership, and that the *bona fide* debts of said limited partnership amount to the sum of $400,000.

The prayer of the bill is, in substance, as follows: That each of the defendants answer, (but not under oath,) setting forth the actual amount due to them, respectively, the consideration of their several demands, when they become due, and what amount has been realized thereon; that each of the said confessed judgments

may be decreed to be illegal and void, and that the said pretended transfer of the property and assets of said limited partnership to said Benjamin B. Fay and Lucius W. Conkey was fraudulent and void; that it be further decreed that all the goods and merchandise levied upon and seized under the said executions, based on said confessed judgments, or either of them, and the notes, drafts, bills of exchange, debts and choses in action so taken possession of by said Hancock, were and are the goods, chattels, property, assets, effects and choses in action of said limited partnership, and, as such, subject to the lien of and charged with the payment of all debts due and owing by said limited partnership, ratably and in the proportion that each debt bears to the whole indebtedness of said limited partnership, and that each of the defendants be decreed to pay to the receiver appointed herein whatever sum they, or either of them, have received out of the said limited partnership assets by virtue of their respective judgments, or any proceeding or suit based thereon; that out of the moneys paid to such receiver he shall pay all costs, expenses and attorneys' fees necessarily incurred in the prosecution of this suit, and that the remainder shall be paid ratably to the creditors of said limited partnership; that summons may issue, etc.

On the petition of the appellee, the First National Bank of Chicago, the cause was removed to the Circuit Court of the United States for the Northern District of Illinois in April, 1883. (18 Fed. Rep. 3.) There a general demurrer to the bill by the bank was overruled, and thereupon it answered, and a hearing was had, resulting in a decree, on May 3, 1888, granting the prayer of the bill. (34 Fed. Rep. 692.) From that decree the bank appealed to the Supreme Court of the United States, and there, on its motion, the cause was remanded to the circuit court of Cook county, which it reached October 18, 1890, and was re-docketed. After granting leave to numerous other creditors of the partnership to file inter-

. vening petitions, the circuit court allowed complainants to file an amended and supplemental bill. It repeated, in substance, the allegations of the original bill as above set forth, and the prayer for relief is based upon those allegations. The amendments are by the way of setting up, in detail, the business transactions of the limited partnership, and of the parties thereto, subsequent to January, 1883, stating with great particularity the conduct of Boies, Fay, Conkey and Graves in the alleged fraudulent attempt to evade the provisions of the statute authorizing the formation of limited partnerships. To this amended bill appellee and Julius K. Graves each filed demurrers. That of the bank was sustained, and as to it the bill was dismissed at the complainants' cost. That of Graves was overruled. No order whatever seems to have been made as to the other defendants. From the decree in favor of the bank the complainants prayed and were allowed an appeal to the Appellate Court. There a motion was entered by the appellee to dismiss the appeal, upon the ground that it was prematurely taken, the cause remaining undisposed of in the circuit court as to other defendants. That motion was overruled and the decree below affirmed. See 47 Ill. App. 574.

While counsel for appellee make the point that the appeal should have been dismissed by the Appellate Court, it is not specially insisted upon. It is undoubtedly true that, under the general rule, an appeal, as against the bank, would not lie until the cause was finally disposed of in the circuit court; but we think the Appellate Court properly held this case within an exception to the general rule, and we are not disposed to disturb its decision on that question. The object of this bill is to secure a general fund in the hands of receivers for the mutual benefit of the creditors of the alleged limited partnership, by having certain preferences set aside. The amount of that fund can only be ascertained by a determination of the issue as to this appellee.

There can, we think, be no doubt that the bill shows, upon its face, that complainants are entitled to the relief sought if it sufficiently appears that the limited partnership of Boies, Fay & Conkey legally existed. The statute expressly provides : "It shall not be lawful for any such partnership, nor any member thereof, in contemplation of bankruptcy or insolvency, and with the intention and for the purpose of paying or securing any one or more of their creditors in preference to any other of their creditors, to make any sale, conveyance, gift, transfer or assignment of their property or effects, or to confess any judgment, or to create any lien whatsoever upon their property or effects; and every such conveyance, gift, transfer or assignment involving such judgment or other lien, shall be and the same is hereby declared to be utterly void." Chap. 84, sec. 22, *supra.*

Chancellor WALWORTH said, in *Innis* v. *Lansing,* 7 Paige, 585, speaking of the New York statute, similar to our own: "The title of the Revised Statutes relative to limited partnerships appears to have constituted the effects of the firm a special fund for the benefit of all the creditors, which fund, in case of insolvency, is to be distributed among such creditors ratably, in proportion to the amount of their respective debts. By the fifteenth section the special partner is prohibited from withdrawing any part of the capital of the firm or any of its effects, except actual profits made upon the original capital, and by the twentieth and twenty-first sections every sale, assignment or transfer of any of the property or effects of the firm, or of the property or effects of a general or special partner, after the firm or himself has become insolvent, or in contemplation of such insolvency, with the intention of giving a preference either to a creditor of the firm or to a creditor of the general or special partner, is declared to be void as against the creditors of the partnership. The general and special partners are also prohibited from confessing any judgment creating any

156—23

lien upon the partnership property or the property of any of the partners, or giving any security under such circumstances and with such intent. It is evident from these statutory provisions that the legislature could not have intended that a creditor of such insolvent limited partnership should be compelled to proceed to judgment and execution at law, the necessary effect of which might be to give him a preference over other creditors, before he could be permitted to file a bill in this court to prevent the partnership funds from being wasted by the insolvent partners and to obtain payment of a ratable portion of his debt out of the fund.. Although any creditor, therefore, may proceed at law for the recovery of his debt unless a decree has been obtained in this court for the benefit of all creditors equally, or the property has been transferred to a trustee or receiver for the purpose of having such a ratable distribution thereof, I think this court is bound to carry into effect the principle of the statute, by treating the property of the limited partnership, after insolvency, as a trust fund for the benefit of all the creditors; and if the insolvent partners neglect to place the partnership effects in the hands of a proper and responsible trustee, to be distributed without delay among all the creditors of the firm other than the special partner, ratably, in proportion to the amount of their several debts, either due or to become due, any creditor may file a bill in this court in behalf of himself and the other creditors of the firm, and may have a receiver appointed to protect the trust fund and to distribute it among the several creditors who may come in and prove their debts, under the decree to be obtained on such bill." This case is followed in *Whitcomb* v. *Fowle*, 56 How. Pr. 367, and *Batchelder* v. *Altheimer*, 10 Mo. App. 181. See, also, *Whitewright* v. *Stimpson*, 2 Barb. 379, and Troubat on Limited Partnership, sec. 393.

The controlling question in this case then is, does the bill show the formation of the partnership in question?

Both courts below held that it does not, and for the single reason that the affidavit by Benjamin B. Fay, one of the general partners, that the amount specified in the certificate of partnership as having been contributed by the special partner, Graves, had been actually contributed, did not conform to the requirements of section 7, *supra.* The language of the section is: "At the time of filing the original certificate, as before directed, an affidavit of one or more of the general partners shall also be filed in the same office, stating that the amount in money, or other property at cash value, specified in the certificate to have been contributed by each of the special partners to the common stock, has been actually and in good faith contributed and applied to the same." The affidavit set out in the bill is as follows:

"STATE OF ILLINOIS, ⎫
   *County of Cook.*    ⎬ ss.
                        ⎭

"Benjamin B. Fay, being duly sworn, deposes and says that he is one of the general partners in the limited partnership and firm of Boies, Fay & Conkey. And deponent further says, that the amount of fifty thousand ($50,000) dollars stated in the certificate of said partnership to have been contributed to the capital stock thereof by the said special partner, has been actually contributed and applied and paid into the same.

                              BENJAMIN B. FAY.

"Subscribed and sworn to before me this 30th day of March, A. D. 1882.

              J. EDWARDS FAY, *Notary Public.*"

The objection to it, as a compliance, is, that it does not state in what "the amount of $50,000 was contributed," or that the amount was contributed "in good faith."

Counsel for appellants insist that, even if it should be held that this affidavit does not conform to the requirements of section 7, the only result would be to make Graves liable as a general partner, leaving the limited partnership still existing. This position, under the alle-

gations of the bill, we do not regard tenable, since section 8 of the statute expressly provides that "no such partnership shall be deemed to have been formed until such certificate, acknowledgment and affidavit shall have been filed, as above directed." Our conclusion, however, upon a further consideration of the point, is, that the affidavit is, in fact, a substantial compliance with the requirements of the statute. Section 7 does not prescribe the form in which the affidavit shall be made, nor require the use of particular words in making the statement. That is to say, if this affidavit had stated that the contribution was in silver coin or national bank currency, and honestly made, it could not have been reasonably urged that it was insufficient because it did not say "in money" and "in good faith." All that the statute requires is, that if the contribution is in money the affidavit shall be in language sufficiently definite to show that fact, and that it was contributed fairly and honestly. (Bates on Limited Partnership, sec. 31.) The statement, here, that the amount of $50,000 "has been actually contributed and applied and paid into the same," can reasonably be given no other meaning than that it was contributed and paid in in cash. In *Johnson* v. *McDonald*, 2 Abb. Pr. 297, the language in an affidavit, "paid in, in good faith, to the common stock of said firm, the sum of $1000," was held to mean "paid in cash," the court saying: "What is the legal meaning of 'paid in?' Can those words mean, legally, anything else than paid in cash?" So in *Holliday* v. *Union Bag and Paper Co.* 3 Col. 343, the language was, "has contributed to the said firm of Holliday & Co. the sum of $12,000, which said sum has been actually and in good faith contributed to the business and applied to the common stock of said firm," and it was said: "The only interpretation to be given this language is, that it was $12,000 in cash."

Counsel for appellee say those cases are distinguishable from this, because there the language is "sum of," etc., whereas here it is, "amount of," etc. We do not

concur in this view. The words "sum" and "amount," in the connection in which they are used, must be given the same meaning.

It seems clear to us that this affidavit cannot be true, as contended by counsel, and yet the contribution have been in the promissory note or agreement of the special partner to pay. "Paid in" does not mean a promise or agreement to pay, but actual payment. Does the affidavit show that the contribution was made "in good faith?" Good faith means, "honest, lawful intent; the condition of acting without knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful scheme." (Anderson's Dictionary of Law.) The fact which must be shown by the affidavit, as required by the statute, is, that the amount specified in the certificate of partnership to have been contributed by each of the special partners to the common stock has been honestly and without fraud paid in and applied, and we think the statement that it has been actually paid in, (which, as we have seen, means paid in in cash,) contributed and applied, fills every requirement of the statute. "Actually paid in, contributed and applied," means "in fact," "really," "in truth," paid in, contributed and applied. (See definition of the word "actually," in Webster's Int. Dic.) We are unable to see that the addition of the words "in good faith," in this affidavit, would have done more than emphasize what was in fact stated. The affidavit, as made, could not have been true if the contribution of $50,000 was merely colorable.

It has been suggested that, for anything appearing in Fay's affidavit, the money may have been paid in to be immediately withdrawn. But we do not think so. If paid in merely as a formal matter, with the intention of again drawing it out, it was not "actually paid in, contributed and applied" to the capital stock, and the affidavit was absolutely false. The addition of the words "in good faith," would have stated no fact not alleged in the

affidavit as made. The most that can be said is, that
their use would have made it more explicit. As we said
in *Henkel* v. *Heyman*, 91 Ill. 96, the statute authorizing
limited partnerships must be substantially complied with,
or those who associate under it will be liable as general
partners; and we do not wish to be understood as giving
a meaning to the language "substantially complied with,"
which will dispense with the statement of any fact re-
quired to be shown in the affidavit made necessary by
section 7. What we do hold is, that those facts need not
be stated in any particular language, and that they suf-
ficiently appear in the affidavit in question, and that
therefore the limited partnership of Boies, Fay & Conkey
was legally formed.

Counsel for appellee make the further point, that,
even though this is true, the bill shows upon its face that
such partnership was dissolved, and they insist com-
plainants cannot attack the legality of that dissolution
as mere contract creditors. The allegations of the bill,
admitted by the demurrer, are to the effect that the
partnership was not, in fact, dissolved, but that the
parties thereto merely pretended to dissolve the same in
furtherance of their purpose to prefer certain creditors
and to wrong and defraud the complainants and others,
and that their action in that regard was wholly illegal and
void. That being true, no reason exists why a contract
creditor may not attack an unlawful preference the same
as though no attempt had been made to dissolve the
partnership.

It is finally insisted that the amended and supple-
mental bill presents new causes of action against the
bank not appearing in the original bill, and to these the
five years statute of limitations is interposed by way of
special demurrer. What those new causes of action are,
the special demurrer does not point out; nor do counsel
in their argument furnish us any information as to what
they are, or how they are shown by the amendment to be

distinct claims from those made in the original bill. If any such do appear, the defense may be availed of by proper answer; but we find no sufficient reason, in the present presentation of the case, for holding any part of the amended bill bad on demurrer.

The judgment of the Appellate Court will be reversed and the cause remanded to the circuit court of Cook county, with directions to overrule appellee's demurrer and grant it leave to answer the bill, if it so desires.

*Reversed and remanded.*

Mr. JUSTICE BAKER:   I do not concur in this opinion.