Dreyer v. Goldy.

---

### Edward S. Dreyer et al. v. Howard I. Goldy et al.

62 347
62 657
62 347
64 244
62 347
171s 434

1. EQUITY PRACTICE—*Exhibits Control the Allegations of the Bill.*— Where the allegations of a bill are more specific as regards certain matters of contract than the contract itself, which is made an exhibit to the bill, the contract, and not what is alleged in the bill, must control.

2. USURY—*Reserving Compensation by Lenders of Money.*—When a party makes a loan of his own funds, the reserving of a compensation to himself for his services in making the loan, if in excess of legal interest, renders the contract usurious; but it is otherwise if the compensation is for negotiating a loan from others.

3. EQUITY—*Will Not Enforce Unconscionable Contracts.*—If a contract is shown to be inequitable and unconscionable, a court of equity will not enforce it.

4. APPEALS—*Before Final Decree.*—The court holds this case an exception to the general rule that an appeal will not lie until a final decree as to all parties has been rendered.

**Bill for an Account, etc.**—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

LACKNER & BUTZ, attorneys for appellants.

SLEEPER & BARBOUR, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The basis of the bill in this cause was a contract, the material parts of which are as follows :

" This agreement, made this sixth day of April, 1886, by and between E. S. Dreyer & Co., of the one part, and Francis P. Owings and Howard I. Goldy, of the other part, witnesseth as follows :

Whereas, said Owings and Goldy are the lessees of the following described property, to wit : " (describing) it " upon which property they are about to erect stores, dwelling, a theatre, and other improvements; and whereas, said E. S. Dreyer & Co. have agreed, and hereby do agree to make to said Owings and Goldy a building loan on said property and improvements, not to exceed the sum of twenty-two thousand dollars.

Now it is agreed on the part of said Owings and Goldy, in consideration of the premises, that said E. S. Dreyer & Co. shall have the exclusive right, so long as any part of said loan shall remain unpaid, to collect all rents that may become due, from time to time, for said premises, and all parts, and to let said premises, but at prices first mutually agreed on, and all parts, from time to time; that they shall also have the exclusive right to place all policies of insur-

ance on said property; that out of the moneys so collected, said E. S. Dreyer. & Co. shall first pay to themselves a commission of two and one-half per centum for such collections, letting, which percentage shall be in full for all services and expenses incurred in such collections and letting; they shall then pay all moneys expended for repairs, taxes and insurance, and ground rent; they shall then pay interest that may from time to time become due on said loan, and they shall also retain in each month, out of the rents, the sum of two hundred and fifty dollars as a sinking fund, which they shall use from time to time in paying off the principal of said loan, as it may be received by the holders of the notes and trust deeds about to be executed by said Owings and Goldy.

It is further agreed by Owings and Goldy that they will pay to E. S. Dreyer & Co., for their services in procuring said loan, and generally in forwarding the enterprise, the sum of $1,000 per year, in addition to the commissions above agreed to be paid, so long as E. S. Dreyer, one of the members of the firm, shall live, provided, however, that if said Dreyer should die before the end of ten years from this date, then such payments shall, nevertheless, be made to said firm for a full term of ten years.

Said payments shall be made in monthly installments for $83.33 each; shall commence on the 1st of September, 1886, and shall likewise be deducted from the rent as the same is collected.

After making all the payments and deduction, as above stated, said E. S. Dreyer & Co. shall pay the balance or surplus in each month to said Owings and Goldy, that is to say, one-half thereof to said Owings and one-half to said Goldy.

And on the part of said E. S. Dreyer & Co. it is agreed that they will use their best endeavors in collecting said rents and letting said premises, and out of the same will make the payments above stated, so far as the same will reach; and that when said loan or loans, which are to be for three years in the first place, have become due, they

will cause the same to be extended from time to time, provided that at least $3,000 per year is paid in reduction of said loan as above agreed.

Should said E. S. Dreyer & Co. not succeed in extending said loan, then said Owings and Goldy shall be absolved from further making the annual payment of $1,000 as hereinbefore stated.

It is also agreed that this contract shall bind the heirs, executors, administrators and assigns of said parties, and of each of them.

(Signed)     FRANCIS P. OWINGS,     (Seal.)<br>
             HOWARD I. GOLDY,       (Seal.)<br>
             E. S. DREYER & Co.     (Seal.)"

The bill was filed by the appellants, Edward S. Dreyer and Robert Berger, composing the firm of E. S. Dreyer & Co., and alleged that they, the said firm, procured the loan mentioned and that the moneys so obtained were paid out by them in the erection of the contemplated improvements; that they took possession of said property and managed it for "a number of years," and collected the rents and deducted therefrom said monthly installments of $83.33 from September 1, 1886, to and until Goldy, who had become the owner of the interest of Owings, transferred the possession of said property to one Frank J. Stern, and that Goldy and wife deeded the property to said Stern on October 27, 1891; that Stern holds the property in trust for Goldy to reimburse himself for advances made on the property, and when that has been done, to reconvey the same to Goldy, and his wife, Clara J. Goldy; that said contract was recorded May 24, 1886, and that Stern had full and actual notice of said contract, and went into possession of the property with the understanding and agreement on his part that he would pay out of the rents which he might collect from the property, "the various liens and fixed charges on said property, such as ground rent, interest on the incumbrances then resting on said property, and said sum so annually due to said E. S. Dreyer & Company," and that "with this understanding and agreement, they (the appel-

lants) delivered to said Frank J. Stern the various leases of said property and surrendered to him the possession of said property; that he has been ever since the date of said deed, and is now, in possession of said property, collecting said rents, but that he has refused and still does refuse to pay to said E. S. Dreyer & Company the amount so due to them under said agreement."

Then follows an allegation that the amount due and to become due, under " said agreement," to the appellants constitute a charge upon said rents and a lien upon said leasehold estate.

The prayer of the bill is for an accounting between appellants and said Stern, Goldy and Owings; that Goldy and Owings may be decreed to pay to appellants the sum so to be found due, on an accounting, and that in default of such payment Stern may be decreed to pay the amount so found to be due, and the future installments to become due, out of the rents, and in default thereof that the premises may be sold, and that a receiver be appointed.

Stern answered the bill, and Goldy and his wife demurred, both generally and specially.

This appeal is from the order sustaining the demurrer of the Goldys, and dismissing the bill as to them.

Counsel for appellants say in their brief: "It is not necessary to consider upon this appeal the rights in the premises in question as between the complainants and Frank J. Stern. The demurrer, from the order sustaining which this appeal is taken, is the demurrer of Howard I. Goldy, who, with Owings, executed the contract set out in the bill, and to whom Owings and wife subsequently conveyed all their interests in the premises in question; the only question, therefore, which we are here called upon to consider, is as to the sufficiency of the allegation of the bill to entitle the complainants, as against Goldy, the party to the contract in question, to the relief prayed for, or any part thereof."

Laying aside, therefore, all consideration of the rights between appellants and Stern, was the demurrer properly sustained as to Goldy? We think it was.

It is not clear from a reading of the contract whether the loan was to be made by appellants from their own funds, or was to be negotiated by them from others. The first mention of the loan is that appellants "have agreed and do hereby agree to make" it. Other expressions indicate that the loan might be held by parties other than appellants. And it is, perhaps, not an unreasonable inference that the agreement contemplated an advance of it at first from appellants' own funds, and a subsequent holding of it by persons to whom it might be sold, in the course of appellants' business, but such is not a necessary inference, and we do not lay stress upon it.

The allegations of the bill are somewhat more specific in that regard, but making the contract an exhibit to the bill, the contract itself, and not what is alleged, must control. Field v. Brokaw, 40 Ill. App: 371.

If it were a loan made by the appellants of their own funds, then under well settled law the reserving of a compensation to the lenders of $1,000 a year was clearly usurious.

If, on the other hand, it was compensation for negotiating and procuring the loan from others, and for others' services, another question arises. The bill alleged that "on the part of said Francis P. Owings and Howard I. Goldy it was agreed that, besides paying the ordinary commissions for the procuring of said loan, they would, for the services of the said E. S. Dreyer & Co., hereinbefore mentioned, and for such other services as they might perform under the terms of said written agreement, to which reference is hereby made, pay to said firm the sum of one thousand dollars per year as long as said Edward S. Dreyer, one of the members of said firm, should live, providing, however, that if said Edward S. Dreyer should die before the end of ten years from the date of said agreement then such payment should, nevertheless, be made to said firm for the full term of ten years; a complete copy of which said agreement is attached hereto, marked 'Exhibit A,' and made a part hereof."

The services referred to in said allegation as "hereinbefore mentioned," were the procuring of the loan of $22,000, and the agreement of appellants to take charge of and manage the property, negotiate leases, collect rents and place insurance, and generally forward the enterprise, and all, except the procuring of the loan, were the same as the contract itself specified should be performed by appellants for a certain fixed compensation of two and one-half per cent.

Just what was included within the allegation concerning "such other services as they (appellants) might perform under the terms of said written agreement," is not at all certain from the bill. But it becomes so when we look at the contract to which reference is made. As already said when a writing is made a part of the bill, what it contains and not what it is alleged by the bill to contain, will control.

Looking to the written contract we find it is there said that Owings and Goldy will pay to appellants, "for their services in procuring said loan and generally in forwarding the enterprise, the sum of one thousand dollars per year, in addition to the commissions above agreed to be paid," so long as E. L. Dryer shall live, or for ten years, in case he should die within ten years.

Appellants appealed to a court of equity to enforce a contract to pay them, besides the usual commissions, as alleged, $1,000 a year for a term that has now run nearly ten years, and that the vigor of Mr. Dreyer may (and as personal to himself we hope will) prolong very many more years, for services in procuring a $22,000 loan, and "generally in forwarding the enterprise," whatever that may mean.

Such a contract is inequitable and unconscionable on its face, and one that the analogy of all authorities denies to a court of equity the duty of enforcing, as against one in the attitude of a suppliant borrower of money.

In either event, whether the contract was for a loan direct from the appellants, and therefore usurious, or was for the procuring of the money from others at such an in-

equitable and unconscionable compensation, a court of equity will refuse to enforce it.

Another reason for affirming the decree of the Superior Court might be given in fewer words—that so far as these appellees are concerned independently of Stern, who holds the title, and to whom appellants surrendered possession and delivered the leases, there would seem to be a complete remedy at law. But we prefer to base our decision on the grounds before discussed.

It is urged that this appeal should be dismissed on the ground that no appeal lies from an order dismissing a bill as to only a portion of the parties to it.

The weight of authority is doubtless that way. Thompson v. Follansbee, 55 Ill. 437; International Bank v. Jenkins, 109 Ill. 219; Hutchinson v. Ayers, 117 Ill. 558; Hoffman & B. Mfg. Co. v. Haxton Steam H. Co., 18 Ill. App. 484; Packer v. Roberts, 44 Ill. App. 232.

But we declined to dismiss in a like case, Crouch v. First Nat'l Bank, 47 Ill. App. 575, for reasons that operate in our minds with reference to this case, and the Supreme Court approved our action. Same case, 156 Ill. 342.

Stern holds the property in trust only for the benefit of the Goldys, and the question of the liability of the Goldys under the contract with appellants, must necessarily precede, in determination, that of Stern, who stands in the place of the Goldys so far as the property is concerned. If the Goldys are not liable, then under anything shown by the record now here, neither is Stern nor the property; and we think we may properly, as we did in the Crouch case, *supra*, regard this case as an exception to the general rule that an appeal will not lie until a final decree as to all parties has been rendered.

The decree of the Superior Court is affirmed.