Henry R. WENDLING, Appellant
(Defendant below),

v.

Glen E. CUNDALL and Opal I. Cundall,
husband and wife, Appellees
(Plaintiffs below).

No. 4646.

Supreme Court of Wyoming.

Aug. 26, 1977.

W. Perry Dray of Dray & Madison, Cheyenne, for appellant.

Donald E. Jones of Jones & Rogers, Torrington, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

Wendling presents for decision the question of whether the Cundalls used *utmost good faith* in selling real property earlier acquired from Wendling. In the Agreement for Exchange of Real Estate pursuant to which the Cundalls acquired the property, Wendling agreed that in the event the Cundalls sold the property within three years for an amount less than $60,000 he would pay them the difference between the sales price and $60,000. The contract further provided that the Cundalls should use *utmost good faith* in selling the property at its fair market value and should notify Wendling at least 30 days before any sale at less than the $60,000 figure. The district court found in favor of the Cundalls in their action against Wendling to recover $50,000, the difference between the $60,000 and the $10,000 for which they actually sold the property. In seeking a reversal of this judgment Wendling contends that the district court, in a trial without a jury, reached a conclusion contrary to the evidence in the case.

In an ably structured argument Wendling first presents his justification for this Court redeciding the question of the use of *utmost good faith* by the Cundalls in reselling the property. Whether this Court is justified in substituting its judgment for that of the district court is a preliminary question to be resolved. Assuming that the primary question can be reached the issue presented is whether the conduct of the Cundalls did constitute *utmost good faith*. A sub-issue in connection with the judgment relates to the sufficiency of the evidence to demonstrate that the sale by the Cundalls in any event was accomplished for a price that would constitute fair market value.

Wendling relies upon a series of prior decisions by this Court in urging the proposition that if evidence at the trial is uncontroverted the findings by the district court may be treated as legal conclusions, which are subject to reversal by the appellate court, and which should be reversed where only a contrary conclusion can be drawn from the evidence. See *Murphy v. Petrolane-Wyoming Gas Service*, Wyo., 468 P.2d 969 (1970), on petition for rehearing; *Wyoming Farm Mutual Insurance Co. v. May*, Wyo., 434 P.2d 507 (1967); *In re Stringer's Estate*, 80 Wyo. 389, 343 P.2d 508 (1959); *Twing v. Schott*, 80 Wyo. 100, 338 P.2d 839 (1959); *Hercules Powder Co. v. State Board of Equalization*, 66 Wyo. 309, 210 P.2d 824 (1949), on petition for rehearing.

While these cases rather broadly state principles which justify Wendling's proposition, a more strict analysis demonstrates that the role of this Court in such an instance is the same as in any other case. The essence of the review by the appellate

court in such an instance is that of the usual case, deciding whether the district court correctly applied the legal rule or principle to a defined set of facts. The assumption is that the facts are settled as being the ones disclosed by the unrefuted testimony, and the question to be resolved is whether the district court committed an error of law in applying a rule of law to those facts to reach its result. The function of the reviewing court is similar to its function in reviewing the granting of a motion for summary judgment. We must decide whether the trial court correctly determined that the prevailing party was entitled to judgment as a matter of law on a given set of facts. See *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975); *Dixon v. Credit Bureau of Douglas*, Wyo., 419 P.2d 707 (1966).

■ Turning then to the merits of this appeal, we first consider the appropriate rule to be applied, i. e., what standard is imposed by a requirement incorporated in a contractual provision which requires *utmost good faith*. Since the real property involved in this instance was located in Illinois we consider both Illinois and Wyoming law in defining the standard of good faith. In Illinois "good faith" has been held to mean honest, lawful intent, and the condition of acting without knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful scheme. *Crouch v. First National Bank*, 156 Ill. 342, 40 N.E. 974 (1895); *Collins v. Becklenberg*, 236 Ill. App. 324 (1925). This Court previously has espoused a definition from the Supreme Court of Dakota as follows:

" * * * 'Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious.' *Gress v. Evans*, 1 Dak. 399, 46 N.W.Rep. 1132." *Cone v. Ivinson*, 4 Wyo. 203, 33 P. 31, 34 (1893).

■ Wendling relies upon similar definitions, and assigns significance to the word *utmost* which he argues converts the good faith definition into one encompassing diligence, business skill, and actual efforts to sell beyond a requirement of honesty in fact. The correct standard is different from the one urged. The Uniform Commercial Code as adopted in Wyoming, § 34–1–101 et seq., W.S., would not encompass this transaction relating to real estate. The legislature did, however, define "good faith" as those terms would apply to most other commercial transactions conducted by persons owing no fiduciary or other special obligation to one another. Pursuant to § 34–1–201(19), W.S., " 'Good faith' means honesty in fact in the conduct or transaction concerned." This standard is essentially the same as the one espoused in *Cone v. Ivinson*, supra. Absent some compelling reason, which is not present here, it is appropriate to have a similar definition of good faith applicable to transactions like this as pertains to those governed by the Uniform Commercial Code and the law merchant. We subscribe to the proposition that this test requires honesty of intent rather than diligence or nonnegligence. *Eldon's Superfresh Stores, Inc. v. Merrill, Lynch Pierce, Fenner & Smith*, 296 Minn. 130, 136, 207 N.W.2d 282 (1973). See also *Farmers Cooperative Elevator, Inc. v. State Bank*, Iowa, 236 N.W.2d 674 (1975). Such a definition is similar to that which has been invoked in other cases. E. g., *Vernon v. McEntire*, 234 Ark. 995, 356 S.W.2d 13 (1962); *Efron v. Kalmanovitz*, 249 Cal. App.2d 187, 57 Cal.Rptr. 248 (1967); *Smith v. Whitman*, 39 N.J. 397, 189 A.2d 15 (1963); *Doyle v. Gordon*, 158 N.Y.S.2d 248 (S.Ct. Special Term 1954).

■ As so defined the concept of *good faith* stands as an absolute not divisible in degrees which would afford additional significance to modifying words such as *utmost*. *Good faith* is either present or it is not, but as honesty in intent it cannot be a matter of degrees. Consequently, in instances such as this *good faith* must be the same as *utmost good faith*.

■ We proceed to apply this standard of honesty in intent to the facts of record.

The contract out of which the Cundalls' claim arose was dated July 7, 1971, and is entitled, "Agreement for Exchange of Real Estate." A part of the consideration furnished by Wendling under the contract is referred to as "a small tract in Aurora Township, Kane County, Illinois," and it is more specifically described in Exhibit B made a part of the contract. With respect to that particular parcel of land, as indicated earlier, the agreement for exchange of real estate provided that if the Cundalls sold the property within three years for less than $60,000, Wendling would pay them the difference between the sales price and $60,000. It was subject to the requirements that the Cundalls use *utmost good faith* in selling the property at the fair market value and that Wendling be given 30 days notice of the sale for less than $60,000.[1]

The record discloses no efforts by the Cundalls to sell this Aurora property prior to December 1973, and demonstrates that up until that time they were not particularly interested in selling the property. Beginning about December 1973, the Cundalls were attempting to acquire land in the Phoenix, Arizona area, and they suggested the exchange of the Aurora property for Arizona property to a real estate salesman with whom they were consulting about the acquisition of property in Arizona. This possibility was offered to several owners of land in Arizona, but all of them advised that they were not interested in the Aurora, Illinois land. Since the Cundalls were unable to arrange a transaction involving an exchange of the Aurora property, they then began to make efforts to sell the Aurora property.

They sought the assistance of the Arizona real estate salesman, and he made inquiries of a licensed broker in the Aurora, Illinois area. Initially, the Illinois broker declined to list the property; his further investigation disclosed that while it apparently was surrounded by developed areas, no sewer facilities were available to service the property, and, although it consisted of only 4.29 acres, it was marketable only as farm land. The record does not disclose whether buyers were contacted by the broker in Illinois, but certainly no sale was effected. The testimony of the Arizona real estate salesman was that there did exist a verbal exclusive listing of the property with the Illinois broker.

These efforts having proved unfruitful, the Cundalls asked the Arizona realtor; Earl C. Cates, who was their accountant and informed of their business affairs; and an attorney in Wheatland, Wyoming, what they should do about marketing the Aurora property. The suggestion which was made, and which they pursued, was to advertise the property for sale in newspapers in the Aurora, Illinois area. This was done on four occasions, and no inquiries were received about the property. The property had to be sold within three years in order for the Cundalls to have any claim under the contract with Wendling. On April 30, 1974, the Cundalls entered into a Purchase Offer Acceptance Receipt with Earl C. Cates pursuant to which they agreed to sell the property to Cates for $10,000. Wendling was advised of this proposed sale in accordance with the requirements of the Agreement for Exchange of Real Estate, and he took no further action.

1. The particular paragraph in the contract reads:

"2. CONDITIONS OF WENDLING'S TRANSFER. That the said Wendling does hereby covenant and agree to cause to be conveyed the aforedescribed real estate, as set forth in Exhibit 'B'—Parcel One, subject only to the following:

\* \* \* \* \* \*

"i) Wendling further agrees to pay to Cundalls in the event the property herein described is sold by the said Cundalls within three (3) years from the date of this Agreement and the net sales price does not equal $60,000.00, an amount equal to the difference between the net sales price received and $60,000.00. The parties further agree that before Wendling shall be liable for any deficiency hereunder, the Cundalls must use utmost good faith in selling the property at the fair market value thereof, and before the property is sold at a price of less than $60,000.00, Cundalls must notify Wendling at least thirty (30) days before any contemplated sale."

It is apparent that the district court did not, under the language of the contract, require of the Cundalls the highest degree of business skill and effort in marketing the Aurora property. Instead, the district judge ruled that all the contract required was that the Cundalls manifest honesty in intent. Essentially, the district court ruled that the Cundalls were justified in relying upon the advice of others with respect to how best to market the Aurora property, and, while other techniques might have been more valid or successful, they were not chargeable with pursuing those techniques under language requiring only honesty in intent. The application of the standard to the facts by the trial court, its finding of ultimate fact, is not inconsistent with the evidentiary facts, and we are not justified in disturbing it upon appeal. *Wyoming Farm Bureau Mutual Insurance Co. v. May*, supra.

There remains the contention of Wendling that in any event the judgment should not be upheld because the district court stated that the evidence was insufficient to demonstrate the fair market value. Wendling contends that since he is responsible only for the difference between $60,000 and a net sales price which constitutes fair market value the judgment cannot stand. The $50,000 is appropriate under the first sentence of the critical paragraph of the contract where Wendling agrees to pay "the difference between the net sales price received and $60,000." The second sentence does not require a sale at fair market value, but instead imposes upon the Cundalls a requirement of honesty in intent to sell at fair market value. That requirement was met. While Wendling was suspicious of the sale to Cates, the judgment with respect to Cundalls' good faith obviates those suspicions.

We do note, and consider as significant circumstances in this case, that Wendling was the one who initially ascribed the $60,000 value to the Aurora property, and that, in accordance with the contract, he was advised of the sale for less than $60,000. He was afforded the opportunity to protect himself for which he contracted. Had the property been worth more than $10,000 Wendling could have purchased it for the greater value.

The judgment of the district court is affirmed.