(No. 89-CC-3429–

THIEMS CONSTRUCTION CO., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1993.*

FLYNN & GUYMON, for Claimant.

ROLAND W. BURRIS, Attorney General (RANDY E.
BLUE, Assistant Attorney General, of counsel), for
Respondent.

## OPINION

PATCHETT, J.

The nature of this claim is breach of contract. This Court has jurisdiction pursuant to section 8(a) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, pars. 439.8(a), (b).) The Claimant asks for an award of $5,019, which represents an amount the Respondent has refused to pay due to an alleged breach of part 645, subtitle B, title 44, of the Illinois Administrative Code, dealing with the utilization of minority subcontractors in highway improvement contracts.

The facts leading up to the controversy are not seriously in dispute. Thiems Construction Co., Inc., hereinafter referred to as Thiems, and the Illinois Department of Transportation, hereinafter referred to as DOT, entered into a contract whereby it was agreed that Thiems would act as a general contractor. The purpose of the contract was to build turn lanes from Route 162 onto Interstate 255, in addition to some storm sewer work. As part of the agreement, DOT required Thiems to subcontract at least 10% of the work to disadvantaged businesses (DBE) and 2% to woman-owned businesses (WBE).

Thiems fulfilled its DBE obligations by utilizing J. Craig Construction, Inc. Regarding the WBE obligations, Thiems proposed to fulfill its obligation by allocating certain work to Nollau Nurseries, Inc., and R. McMillin Truck Service, Inc. There is no dispute that Nollau Nurseries, Inc., completed its work and was paid. DOT, however, charges that Thiems failed to comply with its contract obligations, in that it underpaid McMillin Truck

Service in the amount of $5,019.

Because of the circumstances surrounding the alleged underpayment of McMillin Truck Service, DOT relies on part 645, subtitle B, title 44, of the Illinois Administrative Code, as a defense for withholding the payment. The above-cited Administrative Code provision requires a general contractor to make a written request for modification or waiver of the provision concerning the use of WBEs in the event a WBE is unable to perform. (Section 645.30, Ill. Admin. Code.) Upon receiving this request, DOT will assist the general contractor in locating another WBE by using what amounts to a master list of all qualified WBEs located in the area of the construction project. If another WBE cannot be found, DOT must modify the goal so that the goal equals the amount of work for which minority contractors have been located. (Section 645.20.) If DOT determines the general contractor has failed to use good-faith efforts in securing a WBE, or has somehow caused the WBE goal not to be met, then it is authorized to impose sanctions, including the withholding of payment for that portion of the goal which has not been met. Section 645.50, Ill. Admin. Code, *supra.*

In the present case, Thiems has produced evidence showing that McMillin WBE was unable to provide all the trucking services required of it. McMillin had been hired to haul dirt for the building of an embankment, but when the time for performance came, McMillin had most of its trucks busy hauling asphalt for another job. Because McMillin was unable to locate enough trucks to properly do its job, DOT was forced to hire other trucking companies to help with that haul. The testimony of Thiems indicates that had it waited until McMillin could perform, the project would have been shut down. McMillin was there-

fore able to do some of the work, but not all of it. Gary Theims, Thiems' president, testified that after receiving word of McMillin's failure to perform, an effort was made to contact all other WBEs within an economically feasible range of the construction site, defined to be a 25- to 40-mile radius of the construction site. This effort produced an inquiry by Jaydon Construction, a qualified WBE. Due to a union conflict, that company was likewise unable to perform. No other WBEs expressed any interest in the job.

It is undisputed that, but for the trucking services, all other subcontracting and material supply for the job had been contracted out to other businesses. There is also no disagreement that, had Thiems contacted DOT on a more timely basis concerning the inability to perform by McMillin, DOT would have performed virtually the same procedure as that performed by Thiems. Although DOT disagrees with Thiems as to whether all available WBEs within the feasible range were contacted, no evidence was produced by DOT supporting their position.

In order to determine whether Thiems has met its burden in this case, it is essential to understand the definition of good faith.

"Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously. In addition, the parties to the contract impliedly promise not to do anything that will destroy or injure the other party's rights to receive fruits of the contract."

(*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 539 N.E.2d 856; *Prudential Insurance Co. of America v. Van Matre* (1987), 158 Ill. App. 3d 298, 511 N.E.2d 740; *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Association* (1981), 97 Ill. App. 3d 22, 421 N.E.2d 1375.) The court in *Crouch v. First National Bank of Chicago* (1895), 156 Ill. 342, 357, 40 N.E. 974, 979, defines good

faith as

"honest, lawful intent; the condition of acting without knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful scheme."

Good faith is "honesty in fact in the conduct or transaction concerned" according to the Illinois Uniform Commercial Code. (Ill. Rev. Stat., ch. 26, par. 1—201.) In construing the U.C.C. version of good faith, the court in *Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance* (1977), 49 Ill. App. 3d 213, 365 N.E.2d 1285, 1291, said "good faith is a subjective standard to be determined by the facts in each case." Likewise, good faith, according to *Schintz v. American Trust & Savings Bank* (1910), 152 Ill. App. 76, "implies honest intent. It is consistent with negligence, even gross negligence."

In the present case, there is no doubt that the WBE goal was not met, and that Thiems failed to give timely notification to DOT of the causes of that failure. There is uncontradicted testimony, however, that Thiems tried to locate other WBEs in the area. Evidence was also produced to the effect that Thiems went out of its way to try and find other work for McMillin. In addition, it was established that Thiems had exceeded the WBE/DBE goals on earlier projects. Further, it was proven that Thiems did ultimately notify DOT of McMillin's failure to perform. There is clearly no indication that Thiems intended to avoid its obligations.

In summary, it is reasonable to assume that DOT, had it known of the failure to perform, would have conducted the very same activities with respect to locating another qualified WBE as did Thiems. DOT admitted that it would be significant in their analysis if the general contractor were required to shut down the job because of problems with a WBE subcontractor. It is clear, therefore, that Thiems exercised good faith in trying to comply

with the WBE goals.

Under contract law, the party seeking to enforce a contract has the burden of proving that he has substantially complied with all material terms of the agreement. (*Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 507 N.E.2d 164.) Other than the notification and "good faith" issues, there is no dispute as to Thiems' proper performance of the contract. Under section 645.50 of the Illinois Administrative Code, Thiems is entitled to full and complete payment if he can show good-faith efforts to comply with the goals, whether or not timely notice was given. As has been concluded earlier, Thiems has made good-faith efforts.

We therefore award the Claimant, Thiems Construction Co., Inc., the sum of $5,019. Sufficient funds lapsed in appropriation account code No. 902-49442-7700-0085 to cover the amount awarded.