## WEEKS v. SIBLEY.

(District Court, N. D. Texas, at Amarillo. October 22, 1920.)

No. 79.

1. **Trusts 247—Beneficiary may sue to enjoin trustee from paying tax on trust property.**

A suit in equity may be maintained by a beneficiary of a trust to enjoin the trustee from making return and paying a tax on the trust property alleged to be illegal.

2. **Internal revenue 7—Creation of trust to lessen tax liability held legal.**

The dissolution of a joint-stock company and the transfer of its property to a trustee on a trust such as designated in Revenue Act, § 219 (Comp. St. Ann. Supp. 1919, § 6336⅛ii), *held* valid, where the transfer was permanent and made in good faith, although its purpose was to avoid or lessen future tax liability under the statute.

In Equity. Suit by Harry C. Weeks against S. W. Sibley, trustee. Decree for complainant.

Weeks, Morrow, Francis & King, of Wichita Falls, Tex., for complainant.

Rasbury, Adams, Stennis & Harrell, of Dallas, Tex., for defendant.

WILSON, District Judge. This is an equitable proceeding, brought by the complainant, as beneficiary of Thrift Trust No. 4, a trust estate, for himself and others having like interest. It appears from the bill and the evidence introduced that there was organized in 1918 an unincorporated joint-stock company or association, known as Thrift Oil & Gas Company No. 4, for the purpose of developing an oil and gas lease in Wichita county, Tex.; that the complainant, defendant, and numerous others acquired stock in said company early in 1919; that the operations of the company were successful; that oil was encountered in paying quantities upon the land, and the property became proportionately very valuable; that on August 19, 1919, said company was, by a vote of its shareholders, dissolved, and its assets conveyed to the defendant herein, as trustee of a trust estate, under a trust agreement which gave him, for practical purposes, absolute control of the property; that on September 3, 1919, he sold the trust property for $475,000 in cash and $593,750 to be paid from a certain percentage of the oil to be produced from said property; that the trust agreement provided for the periodical distribution of the income of the trust; that the question of how this transaction was to be handled for income tax purposes was submitted to the Bureau of Internal Revenue in December, 1919, but no ruling was made until May 29, 1920; that in due course the trustee made a fiduciary income

tax return, reporting this transaction substantially in accord with the foregoing, and showing the names and addresses and distributive shares of the gain derived from this transaction by each beneficiary; that thereafter the Bureau of Internal Revenue ruled that the dissolution of Thrift Oil & Gas Company No. 4 was a device to escape taxation, and ineffective as such, and that the tax should be paid in the same way as if the dissolution had not occurred and said sale had been made by the original company; that the complainant was the owner of 15 shares of stock in said Thrift Oil & Gas Company No. 4 at the time of its dissolution, and continued to own his pro rata interest as a beneficiary of the trust; that when informed of said ruling he protested against a voluntary compliance therewith by the trustee, but was informed by the trustee, because of penalties attached to failure to make a return or to pay a tax in accordance with the mandate of the Bureau of Internal Revenue, that he proposed to comply therewith voluntarily.

Thereupon this suit was brought for the purpose of restraining such voluntary compliance, and a temporary restraining order was issued. The Bureau of Internal Revenue and the district attorney of the United States for this district were notified of the pendency of the suit and the subject-matter thereof, and invited to appear as interveners or as amicus curiæ, which they failed to do.

It appears from the evidence that the principal motive of those in charge of the affairs of Thrift Oil & Gas Company No. 4 and its shareholders in dissolving the company and in creating the trust was to avoid or lessen tax liability in the future under the Revenue Act of 1918, and for the purpose of this opinion it may be taken that that was the sole and compelling motive. It also conclusively appears that the sale thereafter made was not in contemplation of the parties at the time of the dissolution; that there were no agreements or understandings, enforceable or otherwise, regarding the sale subsequently made, and in fact that the purchasers of the property were at the time of the dissolution of Thrift Oil & Gas Company No. 4, unknown to any of the shareholders, trustees, officers, or attorneys of said company. Jurisdiction of this court is invoked on the ground of multiplicity of suits and the absence of all legal means of redress for the wrongs which would result, if the trustee paid the tax and complied with the ruling without protest.

It is the complainant's contention, first that Thrift Oil & Gas Company No. 4 had no income subject to tax, and could have no income after it had transferred all of its assets to defendant and had dissolved, and that any profit or income accruing by virtue of a sale subsequently made, accrued to the trust estate, and was subject to taxation under section 219 of the Revenue Act; second, that the gain or enhancement of property realized by the sale is not income within the purview of the Sixteenth Amendment, but that it is enhancement in capital, and not subject to tax without apportionment among the states upon the basis of population, and that any attempt to reach such gain or enhancement by tax upon income is unconstitutional and void.

[1] It seems clear, in view of the decisions in Pollock v. Farmers'

Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, Brushaber v. U. P. R. R. Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493. L. R. 1917D, 414, Ann. Cas. 1917B, 713, and Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546, that under averments similar to those made in complainant's bill this court has jurisdiction to grant the relief sought, there being no reason for a different rule applying as between a beneficiary and a trustee and that applied in the cases above cited as between stockholder and a corporation, although it must be admitted that in view of section 3224, R. S. (Comp. St. § 5947), no member or agent of the Bureau of Internal Revenue can be made a party or in the strict sense precluded by the decision of this court herein.

[2] The evidence establishes that the trust formed as above set forth is such a trust as is provided for in section 219 of the Revenue Act of 1918, it being the character of trust mentioned in section 219 (a) (4), where the income of same "is to be distributed to the beneficiaries periodically whether or not at regular intervals." The same section provides that in cases coming under paragraph (4) of subdivision (a):

"The tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year."

The trust is substantially identical with the one under consideration by our Supreme Court in the case of Crocker v. Malley, 249 U. S. 223, 39 Sup. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, and the distinction for purposes of taxation between trusts of this character and associations is recognized by the Bureau of Internal Revenue in Solicitor's Memorandum No. 1068, as well as other rulings. It therefore appears that, if the purpose and the motive which prompted the dissolution of Thrift Oil & Gas Company No. 4 is not illegal, nor a fraud upon the revenue, the complainant's contention in this respect is correct, and no income accrued to Thrift Oil & Gas Company No. 4 by virtue of the transaction.

It is insisted in the opinion of the solicitor for the Bureau of Internal Revenue that this change is a sham and a subterfuge and is ineffective. This same opinion admits the right of an individual or corporation to regulate or change its business, with a view of reducing or avoiding taxation in the future, but in contradiction with this admission holds that the parties involved in this transaction could not do so. Supporting this view there are several cited cases, most of them by state courts. The case of Pollard v. Bank, 47 Kan. 406, 28 Pac. 202, cited by the solicitor, is directly opposed to his contention. The basis of the decision in the case of Ransom v. City of Burlington, 111 Iowa, 77, 82 N. W. 427, is not that an owner of property may not transfer his property or any part thereof for the purpose of avoiding any sort of tax, but the case holds that the purported transfer in the case of a strip from the front of a city lot, made for the purpose of avoiding a paving assessment, did not in fact pass title, and for

that reason the property was subject to taxation in the hands of purported transferor. The same case held:

> "While one may lawfully dispose of his property to escape taxation, even taxation of a general character, the law will not uphold any mere manipulation under the guise of disposition, the only effect of which is to defeat a tax."

Other cases are cited involving the purchase of tax-exempt government securities at the beginning of a taxable year and the conversion of a cash deposit in a bank into greenbacks at a similar time, the holding of such tax-exempt property for a few days, and the immediate reconversion of same into taxable property for the purpose of escaping the burden of state taxation; the theory of those carrying on these manipulations being that, when they could strictly say that on the day tax liability was fixed they had no such taxable property, they could then immediately reconvert into property subject to taxation, and thus enjoy the benefits of the property subject to tax, and escape the burden of the tax.

These cases are easily distinguished from the case at bar. There is nothing in the record in this case remotely indicating that the dissolution of the Thrift Oil & Gas Company No. 4 was not permanent, and that the shareholders by said dissolution did not permanently and finally abandon and relinquish all of the benefits which might thereafter have arisen on account of their organization as an association. To bring the character of cases above cited in line with the instant case, it would have to be held in the bond and currency cases that, if the individual making the change had continued to hold the tax-exempt property, he would nevertheless, on account of his intention of escaping taxation, be liable therefor, and thus we would have the strange spectacle of constitutional provision overridden, because a citizen intended to avail himself of all of the advantages guaranteed to him by the Constitution.

Bearing in mind the rule of construction which the Supreme Court announced in the case of Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211, and numerous other cases, to the effect that the provisions of the taxing statutes are not to be extended by implication beyond the clear import of the language used, and that they are to be construed most strongly against the government and in favor of the taxpayer, it is the opinion of this court that the right to change the status of an organization, or to dissolve an organization in any legal manner, is not made ineffectual because the motive impelling the change is to reduce or avoid taxation in the future. The right so to do is an incidental right, inseparably connected with an individual's right to own and control his property. It is practically identical with the sale by a citizen of tax-burdened securities and the investment of the proceeds thereof in tax-exempt ones, for the purpose of reducing or avoiding taxation.

It is not unnatural that any thoughtful business man take such steps. It is altogether different from tax dodging, the hiding of taxable property, or the doing of some unlawful or illegal thing in order to avoid taxation. In view of the above holding, it is not necessary, and the

question raised, as to whether or not the gain or enhancement in the value of property realized by its sale is income, and taxable as such, is not here passed upon.

Judgment therefore will be entered, granting the complainant the relief prayed for.