## Arthur L. Collins, Appellee, v. Fred Becklenberg, Appellant.

### Gen. No. 29,276.

Contracts—*invalidity of sale of tax evasion scheme as contrary to public policy.* A system devised by plaintiff by which defendant who was engaged in the real estate business would have created a common-law trust to which he would convey real estate and have the trust convey to his customer in such a manner that, under a ruling of the solicitor of the Department of Internal Revenue, the transfer would not be liable for Federal taxes would be an unlawful scheme to evade taxes and a contract for the sale of such system by plaintiff to defendant, to be applied to pending and future sales, was void and could not be enforced.

Appeal by defendant from the Municipal Court of Chicago; the Hon. J. Fred Gilster, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1924. Reversed with judgment of *nil capiat.* Opinion filed March 9, 1925. Rehearing denied March 23, 1925.

Cloyes, Klingler & Brosius, for appellant.

Simons & DeSouchet, for appellee.

Mr. Justice Johnston delivered the opinion of the court.

This is an appeal by the defendant, Fred Becklenberg, from a judgment in the municipal court of Chicago in favor of the plaintiff, Arthur L. Collins, in

an action brought by Collins, to recover $500 alleged to be due from the defendant on a contract for the purchase of a "tax saving system." The case was tried before the court without a jury. The court found that the plaintiff was entitled to recover the $500 and entered judgment for that amount.

The parties to the contract were Bernard Metal, doing business as Bernard Metal & Co., and the defendant, Fred Becklenberg. The claim of Metal was assigned by him to the plaintiff, Collins. The contract between Metal and Becklenberg was partly in writing and partly oral. The written part of the contract is as follows:

"Chicago, August 9, 1923.

"Bernard Metal & Co.,
10 N. Clark St.,
Chicago, Illinois.

"The undersigned hereby applies for your tax saving system, and agrees to pay therefor a sum equal to one-fourth of the saving resulting from the acceptance and use thereof in connection with all real or personal property owned, controlled or to be acquired by the applicant.

"The saving is to be computed and the fee paid on or before February first of each year, based upon the previous year's savings. However, upon acceptance and adoption of your system, the undersigned agrees to pay you the sum of Five Hundred Dollars ($500.00) as an advance against the amount that will become due February 1, 1924, under this agreement.

"This application effective until mutually canceled in writing.

(Signed)    Fred Becklenberg."

The taxes which the "tax saving system" proposed to relieve Becklenberg from paying were federal taxes relating to the income tax, war profits and excess profits tax. The proposed "tax saving system" is somewhat involved and is not clearly outlined by the statement of claim or the evidence. From the state-

ment of claim, the evidence and the briefs of counsel for the plaintiff and counsel for the defendant, the proposed "tax saving system" may be described in substance as follows: The proposed system is based principally on Regulation 62, section 1566-c of the United States Treasury Department, and on an opinion No. 149 of the Solicitor of the Department of Internal Revenue (Internal Revenue Bulletin, vol. 2, No. 8, pp. 2-7, May 28, 1923). Section 1566-c provides that no gain or loss is recognized when a person transfers any property to a corporation and immediately after the transfer is in control of the corporation; that within the meaning of the provision a person is in control of a corporation when the person owns at least 80 per cent of outstanding voting stock and at least 80 per cent of the total number of outstanding shares of all other classes of stock of the corporation. The opinion of the Solicitor of the Department of Internal Revenue is as follows:

"The M Company, a joint stock association, owned mineral leases which became very valuable upon the discovery of minerals. With the idea of ultimate sale but no immediate sale or purchaser in view, the M Company conveyed said leases unto certain Trustees under a common law declaration of trust for a recited consideration of $10 and the stockholders of M Company, which was automatically dissolved, received an amount of shares in the M Trust equal to the amount of shares held by them formerly in the M Company. Subsequently the Trustees of the M Trust sold the leases for a considerable sum. The questions passed upon by the solicitor being: First, was the transfer from the M Company to the M Trust such a sale as to subject the shareholders to a tax for profits; and, second, should the profits realized by the sale by M Trust be taxable at the rates applicable to a corporation or at the rates applicable to individuals? The solicitor's opinion held, first, that the transfer from the M Company to the M

Trust was not a taxable sale. The transfer was not in any sense a sale by the association and no taxable gain was realized by its members. The property interest of the former associates as beneficiaries under the trust was exactly the same after the transfer as before it. There was no change in the beneficial ownership of the supporting assets. The former associates, after the conveyance to the new Trustees, as before, were owners of identical property interests in the same property. The only effect to the conveyance was the transfer of the legal title to the assets from trustees holding, on behalf of the members as an association to other trustees who were to hold for the same parties as equitable co-owners without associate or other relationship *inter sese.* The transfer was not a sale resulting in taxable gain or deductible loss for income and excess profits tax purposes within the meaning of Section 202 of the Revenue Act of 1918, because in actual fact there was no change in the real ownership of the assets involved; there was merely a change in the form in which the identical parties owned the identical property. Second, the Trustees of the M Trust should return not as a corporation but as fiduciaries, and so might escape the excess profits tax and higher corporate rate of normal tax on the profits made from the final sale of the property because the M Trust was a common law trust and not an association within the meaning of Section 2 of the Revenue Act of 1921.''

According to Metal, by virtue of section 1566-c and the opinion of the Solicitor, Becklenberg in conducting his business, which presumably was the real estate business, could organize a common-law trust which he would control, and could convey property to the trust; the property could then be conveyed by the trust to a purchaser, and the trust would receive the cash payments and take back any mortgages that might be executed for the balance of the purchase money. The trust would pay Becklenberg for the property conveyed to it in certificates which the trust

would be authorized to issue. Under this plan, according to Metal's interpretation of section 1566-c and the opinion of the Solicitor, the transfer by Becklenberg to the trust would not be taxable, because there would be no change in the real ownership of the assets since Becklenberg would be in control of the trust company; the sale by the trust company to the purchaser would not be taxable under the excess profits tax or under the corporate rate of the normal tax, for the reason that the trustees of the trust would make return under the income tax, not as a corporation, but as fiduciaries, since the trust would not be a corporation within the meaning of the Internal Revenue Act.

The nature of the plan is further explained in an answer which counsel for the plaintiff made in their brief to an objection urged against the plan by counsel for the defendant in their brief. The objection of counsel for the defendant is as follows:

"Admitting now, for the purpose of argument, that the plaintiff established in his case in the lower court, that Becklenberg having conveyed to a common law trust, the trustees of the said trust could dispose of his property to a third party and escape, for the time being, having to pay the tax on the profits realized from such sale. Still the scheme would result only in delaying the tax assessment and not in a saving. We respectfully point out that under the terms of the trust agreement submitted by Metal and under the rule against perpetuities, the proposed trust must have expired and terminated at the end of twenty years, and upon dissolution of the trust and the distribution of its assets, the holder or holders of the beneficial certificates therein, at once would become liable to a tax assessment on the profits based upon the difference between the value of the property conveyed to the trust at the time of purchase by Becklenberg and the monies or property received by the certificate holders upon dissolution. In the instance of each piece of property the difference taxable would

be the same as the profit which would have been taxable to Becklenberg upon the sale of his property outright, without the intervention of the trust. In the meantime, if Becklenberg sold his trust certificates, he would be taxable on the same basis, that is, the difference between the value of the property conveyed to the trust at the time acquired by Becklenberg and the proceeds upon the sale of his trust certificates. In either event, the profits realized must necessarily include the increased value of the property while held by Becklenberg.  *  *  * Any taxes saved would be saved by the trust, and while it is true that Becklenberg would not pay taxes on the transfer to the trust, at the same time, in order to reduce to his possession the proceeds of the sale by the trust including the profits realized from the sale of the property, he must cause a dissolution of that trust and having done that, he at once becomes liable for a tax on an amount equal to the profits between the costs of the property to him and the amount received from the purchaser.''

To this objection counsel for the defendant reply as follows:

''Why sell the trust certificates? What would be the use of adopting the system in the first place if one is later going to make a sale of his certificates, or dissolve the trust, or allow it, to terminate by lapse of time, and thus lay himself open to the very tax which he sought to avoid? And why the talk of Becklenberg's 'reducing to possession' the proceeds of the sale, etc.? That doesn't mean anything, when you consider that he is the only *cestui;* he is one of the trustees; (the other two being in all probability merely the figureheads); he has full power to manage and control the property as though it were his own absolutely, and to make distribution of income to himself, and to loan money to himself under any terms.''

The ''tax saving system'' was offered to Becklenberg by Metal not only to be used generally by Becklenberg in conducting his business, but also to be

applied to a specific sale of real estate which Becklenberg intended to make. In this respect Metal testified that he knew that Becklenberg "was going to sell a piece of property around" Diversey avenue and Clark street in the City of Chicago; that Becklenberg told him that he, Becklenberg, "had a contract for the sale of this property"; that the contract for this property "was in existence before" he, Metal, went to see Becklenberg; that his, Metal's proposed "tax saving system was simply a scheme to avoid the tax" that Becklenberg "would have to pay on the profit in that deal and any subsequent deal."

As grounds for reversal it is contended by counsel for the defendant that the action is in the nature of an action in debt, and that it will not lie because the contract has not been fully performed; and that the agreement of Becklenberg "to pay the sum of $500 as an advance against an amount to become due is not an absolute promise to pay a definite sum of money and cannot be made the basis of a suit for that sum."

It will be unnecessary for us to consider these questions as we are clearly of the opinion that the action cannot be maintained for the reason that the proposed "tax saving system" is an unlawful scheme to evade taxes and that, therefore, a contract for the sale of the system would be unlawful and void.

Counsel for the plaintiff maintain that the proposed system would be an "avoidance" of taxation, and not an "evasion," and that a person lawfully may avoid the payment of taxes. Sears on Minimizing Taxes, p. 2.

The principles which distinguish a lawful avoidance of taxes from an unlawful evasion of taxes have been announced in adjudicated cases.

In the case of *Bullen v. State of Wisconsin*, 240 U. S. 625, the court said (pp. 630, 631):

"When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line

indicated by the policy if not the mere letter of the law."

In the case of *Ransom v. City of Burlington,* 111 Iowa 77, the court said (p. 78):

"While one may lawfully dispose of his property to escape taxation—even taxation of a general character—the law will not uphold any mere manipulation, under the guise of disposition, the only effect of which is to defeat a tax."

In the case of *Draper v. Hatfield,* 124 Mass. 53, the court said (p. 56):

"It is well settled that a man may change his habitance or domicile from one town to another, merely because he wishes to diminish the amount of his taxes. If he really intends to change his residence, and does change it, the motive which prompts him to do so is not material. The St. of 1864, c. 172, which imposes a penalty on any one 'who shall escape taxation by wilfully and designedly changing or concealing his residence, or by any other act, with the intent so to escape,' implies that one may change his residence, even for such purpose. The change of residence is not prohibited; it is escaping taxation that is punished."

In the case of *Jones v. Seward County,* 10 Neb. 154, the court said (p. 157):

"It is conceded that United States bonds are exempt from taxation, and that money invested in good faith in such securities cannot be taxed." But the court held that where such bonds were purchased as a mere device to escape taxation, such a purchase was fraudulent.

In the case of *Crouch v. First Nat. Bank of Chicago,* 156 Ill. 342, the court stated (p. 357) that the phrase "good faith" means "honest lawful intent; the condition of acting without knowledge of fraud and without intent to assist in a fraudulent or otherwise unlawful scheme."

In the case of *Holly Springs Sav. & Ins. Co. v. Mar-*

*shall County Board Sup'rs,* 52 Miss. 281, the court said (pp. 288, 289):

"When the State imposes the burden of taxation upon the property possessed by the citizen, it means both that of which he is the open holder and that which he has secreted and concealed. His cunning may in practice defeat the imposition upon the latter, but it is legally no less liable to the burden, and, when discovered, the duty will be exacted, no matter what the shifts and devices which may have been resorted to in order to escape.   *   *   *   The courts will look through the sham, and measure the rights of the parties by the real nature of the transaction."

In the case of *In re Appeal People's Bank of Vermont,* 203 Ill. 300, the court held (p. 306) that when the facts surrounding a transaction "tend to show that such purpose was the evasion of taxation, then the courts may look upon such transaction as none other than fraudulent in law, and of such character that the beneficiaries cannot be allowed, under the cloak of an apparent legitimate transaction, to thus avoid their duty and responsibility to the State."

Tested by the principles announced in the authorities above cited, we are of the opinion that the scheme proposed by Metal is a mere sham and subterfuge to evade the payment of taxes.

The common-law trust, which is the principal feature of Metal's scheme, would not be used as a lawful means of avoiding taxation. We recognize the rule announced in the case of *Weeks v. Sibley,* 269 Fed. 155, 158, "that the right to change the status of an organization, or to dissolve an organization in any legal manner, is not made ineffectual because the motive impelling the change is to reduce or avoid taxation in the future." But the common-law trust proposed by Metal would not be an organization that would take the place of another organization which had been dissolved. Nor would the common-law trust

proposed by Metal supersede Becklenberg in his individual capacity. On the contrary Becklenberg would continue to do business as an individual and the common-law trust would be used by him in conducting his individual business. In other words, the legal status of Becklenberg would not be changed by the organization of the common-law trust, so as to bring the organization of the common-law trust within the rule announced in the case of *Weeks v. Sibley, supra.* Furthermore, in speaking of a sale made by a joint stock association in that case, which association dissolved after the sale, the court said (p. 156):

"It also conclusively appears that the sale thereafter made was not in contemplation of the parties at the time of the dissolution; that there were no agreements or understandings, enforceable or otherwise, regarding the sale subsequently made, and in fact that the purchasers of the property were at the time of the dissolution   *   *   *   unknown to any of the shareholders, trustees, officers, or attorneys of said company."

The sales proposed by Metal's scheme would be made in materially different circumstances.

The case decided by the Solicitor for the Department of Internal Revenue, *supra,* and relied on by counsel for the plaintiff, may come within the rule announced in the case of *Weeks v. Sibley, supra;* but the case decided by the Solicitor for the Department of Internal Revenue, *supra,* is not analogous to the case at bar. In the case decided by the Solicitor for the Department of Internal Revenue, *supra,* when the "M Company," a joint stock association, conveyed its leases to the "M Trust" Company, the stockholders of the "M Company" received an amount of shares in the "M Trust" Company equal to the amount of shares held by them formerly in the "M Company" and the "M Company" was automatically dissolved. Furthermore, when the "M Company" conveyed its leases to the "M Trust" Company, the "M Company"

had no idea of an "immediate sale or purchaser in view." In the case at bar Becklenberg would correspond to the "M Company," and the common-law trust proposed by Metal would correspond to the "M Trust" Company. Becklenberg, according to Metal's scheme, would have a controlling amount of stock in the common-law trust proposed by Metal; but Becklenberg would not transfer property to the common-law trust and then go out of business, as the "M Company" went out of business when it transferred its leases to the "M Trust" Company. Becklenberg would continue in business. Moreover, according to Metal's scheme, at the time that the proposed common-law trust would be organized, the common-law trust would have "an immediate sale" and a "purchaser in view," and also subsequent sales and purchasers; for, as we have stated, the scheme was offered to Becklenberg by Metal for the specific purpose of enabling Becklenberg to escape the tax that Becklenberg would have to pay in a sale of real estate relating to property situated at Diversey avenue and Clark street, for which Becklenberg had a contract of sale; and also to enable Becklenberg to escape the payment of taxes in subsequent sales of real estate.

In the case decided by the Solicitor for the Department of Internal Revenue, *supra,* it was held that the transfer of the leases by the "M Company" to the "M Trust" Company was not a sale, since there "was no change in the real ownership of the assets involved"; that "there was merely a change in form in which the identical parties owned the identical property." In that case there was an actual bona fide change from a joint stock association to a trust company as was evidenced by the fact that the "M Company," the joint stock association, dissolved; and by the further fact that the parties to the transaction had "no immediate sale or purchaser in view." In the case at bar it is true that the transfers of property

from Becklenberg to the common-law trust company would not be sales because Becklenberg would be the virtual owner of the common-law trust, and there would be no change in the real ownership of the assets involved. In legal effect the transfers would be merely transfers from Becklenberg to Becklenberg. But good faith would be lacking in such transfers, because the common-law trust would not be organized for the purpose of changing the legal status of Becklenberg and of conducting the business of Becklenberg; the common-law trust would be organized as a sham or subterfuge to give the appearance of reality and good faith to proposed transfers, which in law would be only fictitious, and which would be made merely to evade taxation. The common-law trust, as a matter of law, would be only Becklenberg, the individual, disguised as the common-law trust. As was said in the case of *Holly Springs Sav. & Ins. Co. v. Marshall County Board Sup'rs, supra* (p. 289), "the courts will look through the sham, and measure the rights of the parties by the real nature of the transaction."

We think it is obvious that Metal's proposed "tax saving system" would not provide a method of avoiding by lawful means the payment of taxes, but that the system would be merely a scheme under the guise of legal forms to evade with dishonest and unlawful intent the payment of taxes.

For the reasons stated the judgment of the municipal court is reversed and a judgment of *nil capiat* will be entered here.

*Reversed with judgment of nil capiat.*

McSurely, P. J., and Matchett, J., concur.