*1161 OPINION.
Trammell:
The issue here is whether the petitioners exchanged their stock in the Excelsior Laundry Co. for 5,000 shares of preferred and 12,500 shares of common stock in Atlanta Laundries, Inc., plus $200,000 cash, or whether they exchanged their stock in the old corporation for stock only in the new corporation. The transaction occurred in 1928, under the circumstances set out in our findings of fact.
The respondent has determined, and the petitioners concede, that the transaction constituted a reorganization within the meaning of that term as used in section 112 (i) (1) of the Revenue Act of 1928. If the petitioners exchanged their stock solely for stock, no gain or loss is recognizable to them under the provisions of section 112 (b) (3) of that act, but if they exchanged their stock for stock and cash, then under subsection (c) (1) of that section the gain, if any, must be recognized to the extent of the money received.
*1162 This question is largely one of fact, and from a careful consideration of all the evidence in the record before us, we have reached the conclusion, and so found, that the petitioners exchanged their stock for stock only; hence, the transaction is nontaxable.
The respondent objects that the written instruments in question ¡ were not signed by either the promoters or the Atlanta Laundries, ! Inc., and therefore did not constitute binding contracts; hence, that \the contract of November 15, 1927, as modified and fixed by the written notice of December 3, 1927, under section VI (d) of the contract, by which the stockholders of the Excelsior Laundry Co. elected to exchange their stock in that company for cash and stock in the new company, was the contract which was carried out. Such contention, we think, is not supported by the evidence.
Herbert J. Haas, who was the attorney for and represented the promoters and the Atlanta Laundries, Inc., both in the negotiations and in carrying out the contract in question, testified that section VI (d) of the contract was not carried out; that no cash was in fact paid by the Atlanta Laundries, Inc., to the stockholders of the Excelsior Laundry Co. for their stock; that all of the previous agreements were modified or changed, as the transactions were finally closed in accordance with the executed agreements of January 14, 1928.
This witness further testified that the transaction was closed in the manner provided by the contracts or agreements dated January 14, 1928, which were agreed to by him in behalf of the Atlanta Laundries, Inc., that the final agreements were drawn by him or prepared in his offi.ce, and that he did not consider it was necessary for the Atlanta Laundries, Inc., to sign the instruments, as it was in the one instance a transferee of stock and in the other the grantee in a deed; further, that the contracts became fully executed upon their delivery on January 16,1928.
The respondent argues that “ Only after consulting their attorneys and considering the question of Federal taxation did the stockholders .attempt to disguise this transaction to make it appear as a nontaxable transaction,” and that we should apply the principal of looking through form to substance and, so viewing the entire transaction, hold that the petitioners exchanged their stock in the Excelsior Laundry Co. for stock in Atlanta Laundries, Inc., and cash.
As we view the matter, under the facts presented here, there is no occasion to apply the principle of looking through form to sub- \ stance. The stockholders of the Excelsior Laundry Co., both in i substance and in form exchanged their stock in that corporation for \ stock only in Atlanta Laundries, Inc., and to reach any other conclu- ! sion by applying a legal fiction would, in our opinion, be inconsistent '< with the facts.
*1163 Tax liability must be determined on tbe basis of what actually occurred, and not what might have occurred; or, as said by the Supreme Court in Weiss v. Stearn, 265 U.S. 242, “ Questions of taxation must be determined by viewing what was actualy done rather than the declared purpose of the participants * * But here what was actually done was entirely in accord with the .declared purpose of the participants, so that both substance and form are identical. See also Stock Yards Bank of Cincinnati, 25 B.T.A. 964; Minnie C. Brackett, Administratrix, 19 B.T.A. 1154, 1159; affd., 57 Fed. (2d) 1072; J. Hampton Hoult, 24 B.T.A. 79, 83; Anna M. Harkness, 1 B.T.A. 127.
Also, we think there is no support for the implication to be drawn from the respondent’s argument that only after consultation with their attorneys respecting the question of Federal taxation did the petitioners attempt to make the transaction appear as nontaxable. As above pointed out, this transaction might have been consummated in either one of three forms, and while substantially the same result would have been achieved by either, the tax liability might have been different. In this situation, prior to the carrying out of the contract of November 15, 1927, and prior to the incurring of any tax liability in connection therewith, the petitioners obtained the consent of the other party to modify the contract so that the transaction as carried out thereunder would minimize their tax liability.
In our opinion this conduct of the petitioners is not subject to adverse criticism. The avoidance of tax liability prior to its in-currence is an entirely different thing from the evasion of tax liability after it is definitely incurred. If a transaction is carried out in such form as to avoid or reduce tax liability, it is not subject to legal censure, provided the method adopted is legal. United States v. Isham, 17 Wall. 496. In the absence of fraud, it is immaterial that the method of effecting the transfer here in question was adopted by these petitioners for the express purpose of avoiding taxes. Boggs-Burnam & Co., 26 B.T.A. 988, 993, and authorities cited. See also Weeks v. Sibley, 269 Fed. 155,158.
Finally, the respondent argues that if this transaction did not constitute an exchange of stock for stock and cash, the stockholders would in any event be taxable on the basis of a liquidating dividend under section 115 (c) of the Bevenue Act of 1928, since the $200,000 received by the Excelsior Laundry Co. from the Atlanta Laundries, Inc., was distributed to the stockholders. It is a sufficient answer to this argument to point out that the distribution of that amount did not constitute either a complete or partial liquidation of the Excelsior Laundry Co. The stockholders did not receive the $200,000 in payment or part payment of their stock; they exchanged their stock in the Excelsior Laundry Co. for stock in the Atlanta Laundries, *1164 Inc., and received the $200,000 as a dividend. Upon the exchange of those stocks the Atlanta Laundries, Inc., thereupon became the sole stockholder of the Excelsior Laundry Co. The sale or exchange of its stock by a group of individual stockholders to a new corporate stockholder did not constitute a liquidation of the Excelsior Laundry Co. The latter company sold its real estate and a part of its personal property for $200,000 in cash, and the fact that a portion of the cash was used to pay dividends declared from the corporation’s surplus, which was in excess of that amount, does not alter the legal effect of the dividends, and any profit derived from the sale of its assets was the profit of the Excelsior Laundry Co. Frank G. Warden, 23 B.T.A. 24.
Two legal transactions, separate both in substance and in form, can not theoretically be considered as one transaction in order to impose a tax. W. A. Hoult, 23 B.T.A. 804. And conversely, separate transactions may not be considered as one in order to avoid a tax. Minnie C. Brackett, Administratrix, supra; J. Hampton Hoult, supra.
A corporation is legally distinct from its shareholders, and in the absence of fraud or unfairness, their separate transactions will not be disregarded, although part of a general plan. In E. H. Nielsen Co., 26 B.T.A. 223, we held that where a contract, after reciting that the shareholders of a corporation desired to sell their interests in the business and property of the corporation as well as their shares, provided that the corporation would sell its assets for $630,000 and declare a dividend of its surplus, and that the shareholders would sell their shares for $200,000, the shareholders received a dividend of $400,000 and sold their shares for $200,000 and did not sell their shares for $630,000.
The principles applied in the above cases are applicable here. The respondent’s determinations are disapproved, but since the deficiencies asserted did not in each instance result entirely from adjustments to income on account of the exchange of stocks hereinabove discussed,
Reviewed by the Board.

Judgment will he entered wnder Rule 50.